**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **FLORIA JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 11-3044-STA-tmp** |
| | ) | |
| **TENNESSEE DEPARTMENT OF HUMAN SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
---

Before the Court is Defendant Tennessee Department of Human Services's ("Defendant" or "DHS") Motion for Summary Judgment (D.E. # 38), filed June 6, 2013. *Pro se* Plaintiff Floria Jackson ("Plaintiff") filed a Response (D.E. # 40) and Objections and Responses to Some of Defendant's Exhibits (D.E. # 41) on June 27, 2013. Defendant filed its Reply (D.E. # 42) on July 10, 2013. For the reasons set forth below, the Court **GRANTS** Defendant's Motion.

### BACKGROUND

Except where noted, the Court finds the following facts undisputed for purposes of summary judgment.[1]

---

[1] In Plaintiff's Disputed Facts of Defendant's Statement (D.E. # 40-1), Plaintiff addresses some of Defendant's facts with citations to the record; however, for the most part, plaintiff uses her Disputed Facts as another opportunity to make lengthy arguments about her claims and explain her version of the facts. Without citations to the record or any evidence to support her allegations, the Court cannot consider this as evidence. Therefore, the Court considers Defendant's facts as undisputed in those instances.

Vocational Rehabilitation Services is a division of DHS.  (Luckett. Aff. ¶ 4, D.E. # 38-11).  The Vocational Rehabilitation Services Division ("Vocational Rehabilitation") provides services to help individuals of work age with physical and/or mental disabilities enter or return to employment.  (*Id.* ¶).  It is the responsibility of the Vocational Rehabilitation Counselor ("VR Counselor") to determine an applicant's eligibility for services.  (*Id.* ¶ 7).  The goal of the VR Counselor is to facilitate the development of a program of services that enables the client to secure, regain, or retain employment.  (*Id.* ¶ 8).  The VR Counselors are overseen by Field Supervisors.  (*Id.* ¶ 9).

Plaintiff, an African American woman, was first employed by Vocational Rehabilitation in 2002.[2] (*Id.* ¶ 4; Pl.'s Exhibits P-1 and P-2, D.E. # 41; Smith Aff., Exhibit, Doc ID 408).  She was employed as a VR Counselor in Unit 9 in Memphis.  (Luckett Aff. ¶ 4; Pl.'s Exhibits P-1 and P-2, D.E. # 41).

While somewhat unclear, it appears that the register is a roster of employees who are eligible applicants for a particular job or a promotion.  (McCrary Aff., Doc. ID 339-40, D.E. # 38-5)  Interviewing and hiring for those positions is done from the register. (*Id.*)  From November 2009 through July 2010, the Memphis Office of Vocational Rehabilitation interviewed candidates from the register on three occasions to fill two vacant Field Supervisor I positions in Unit 9. (Luckett Aff. ¶ 10; McCrary Aff. ¶ 4, D.E. # 38-5).  Connie Phillips ("Phillips"), Director of Field Operations for Division of Rehabilitation Services, and/or Annyce Luckett ("Luckett"), Region 9 Regional Supervisor for Division of Rehabilitation Services, conducted all of the candidate interviews for the vacant positions.  (Phillips Aff. ¶ 5, D.E. # 38-

---

[2] The parties dispute whether it was August or September of 2002.

12).  A recommendation for selection of a candidate was then made by one of these women and the candidate was approved by DHS Commissioner Story.  (*Id*. ¶ 19).  The Tennessee Department of Personnel employment practices were the rules in place at DHS.  (McCrary Aff.  ¶ 5).  Since the registers complied with those rules, a candidate could be selected to fill the Field Supervisor I position from the top three scoring candidates on the register.  (*Id.*  ¶ 6).

The first interview period took place in December 2009 and used register 94028 to identify eligible interview candidates.  (Luckett Aff.  ¶ 12; McCrary Aff.  ¶ 4).  The register was not for a Vocational Rehabilitation position, so nobody was appointed from that register and the register was allowed to expire.  (Luckett Aff.  ¶ 12; McCrary Aff.  ¶ 4).

The second interview period occurred in March and April 2010.  (Luckett Aff.  ¶ 14; McCrary Aff. ¶ 4).  Register 96522 was used to identify eligible interview candidates for the position of Field Supervisor I.  (Luckett Aff. ¶ 13; McCrary Aff. ¶ 4).  Brenda Lawrence ("Lawrence"), a Caucasian woman, and Plaintiff were both listed as eligible individuals on the register and were both within the top three interested candidates.  (Luckett Aff. ¶ 14; McCrary Aff. ¶ 4; Smith Aff., Exhibit, Doc ID 409).  Lawrence had a score of 99 and Plaintiff had a score of 96.  (Luckett Aff. ¶ 14; McCrary Aff. ¶ 4).  Lawrence was appointed to the position.  (Luckett Aff. ¶ 14; McCrary Aff. ¶ 4).  At the time of the appointment, Lawrence had been a VR Counselor in the Jackson office for sixteen years and was a VR Counselor II.  (Luckett Aff. ¶ 16).

Plaintiff alleges that after she interviewed for the position during the first round of interviews, Philips told her that she would call Plaintiff to inform her whether or not she was being promoted, however Phillips never called. (Pl.'s Amended Compl.¶ 10, Doc ID 109). During her second interview, Plaintiff asked why Phillips had never called her regarding the first

interview and Phillips referenced hiring procedures.  Plaintiff also alleges that when asked if it

also had to do with budget concerns, Phillips stated that they had to hire somebody white.

However, Plaintiff has provided no evidentiary support for these allegations. Therefore, the Court

cannot consider them as facts and recites the allegations only to provide context for Plaintiff's

claims.

The third interview period occurred in June and July 2010.  (Luckett Aff. ¶ 14; McCrary

Aff. ¶ 4).  Register 98684 was used to identify eligible interview candidates for the Supervisor I

position.  (Lucket Aff. ¶ 14; McCrary Aff. ¶ 4).  Kamekio Lewis, an African American woman,

and Plaintiff were the only eligible candidates that interviewed for the job.  (Luckett Aff. ¶ 14;

McCrary Aff. ¶ 4; Smith Aff. Exhibit, Doc ID 405).  Lewis was appointed to the position.

(Luckett Aff. ¶ 14).  At the time of the appointment, Lewis had been a VR Counselor for five

years and had earned her Master's Degree in VR Counseling.  (*Id*.  ¶ 17).  She was a VR

Counselor II.  (*Id*.).

At the time of the appointments of Lawrence and Lewis in 2010, Plaintiff had eight years

of experience as a VR Counselor and had not earned her Master's Degree in VR Counseling.  (*Id*.

¶ 15).  She was a VR Counselor II. (*Id*.).

After Lawrence's promotion was announced, Luckett was informed that Plaintiff became

angry and loud in the office, voicing her displeasure with Lawrence's appointment.[3]  (*Id.* ¶ 25).

Luckett requested that Plaintiff come to her office where they discussed Plaintiff's concern.  (*Id*.).

She also reminded Plaintiff to remain professional in the office.  (*Id.*).

_____

[3] Plaintiff disputes that she had an outburst and argues that Luckett fabricated the
incident.  However, Plaintiff cites to no evidence to support her allegation.  Therefore, the Court
takes this fact as undisputed for purposes of summary judgment.

4

On March 25, 2010, DHS announced its ACE Awards, which are awards given to recognize Vocational Rehabilitation counselors who have distinguished themselves. (Smith Aff. Exhibit, Doc ID 397-98). Plaintiff alleges that on April 22, 2010, Luckett told her she would receive an ACE Award due to her performance. (Pl.'s Amended Compl. ¶ 10, Doc ID 111). However, Plaintiff did not receive an ACE Award. (Smith Aff. Exhibit, Doc ID 397-98).

In early summer 2010, Plaintiff called Anneita Dunbar ("Dunbar"), a Human Resources Manager for the Employee Relations division at DHS, and stated she believed she was being discriminated against due to her race. (Dunbar Aff. ¶ 4, D.E. # 38-9). Dunbar informed Plaintiff of the process required to make a formal complaint and told her she could file it with the Tennessee Human Rights Commission ("THRC") office or the Equal Employment Opportunity Commission ("EEOC") Office. (*Id.* ¶¶ 5, 6). Plaintiff did not inquire further about filing a complaint after this first call and Dunbar does not recall speaking with anybody about Plaintiff's inquiry until she heard that Plaintiff had filed suit. (*Id.* ¶ 9).

Plaintiff submitted a letter of resignation on July 13, 2010, effective October 15, 2010. (Luckett Aff. ¶ 26). Between July 13 and October 15, Plaintiff sought employment elsewhere and was given leave to attend interviews pursuant to the normal practice in the region. (*Id.* ¶¶ 27, 28). At no time prior to Plaintiff's voluntary resignation on October 15, 2010 was there any action contemplated to terminate her employment. (*Id.* ¶ 29).

Although the evidence presented by both parties is sparse, it appears that Plaintiff wrote a letter to Commissioner Story regarding her claims of discrimination on August 24, 2010. (Amended Compl., D.E. # 20, Exhibit S). She also filed a Complaint of Harassment with THRC, which was then referred to Beulah Smith, a Special Investigator for DHS. (Smith Aff. ¶

5

4, Exhibit A).  Smith concluded that no racial discrimination or hostile environment existed

against Plaintiff.  (Smith Aff. ¶ 6).

  After receiving a right-to-sue letter from the EEOC, Plaintiff sued Defendant in this

Court, alleging causes of action under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C.

§ 2000e *et seq* (Amended Compl. ¶¶ 1, 8).

## STANDARD OF REVIEW

  A party is entitled to summary judgment if it "shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."[4]  In reviewing a

motion for summary judgment, the court "may not make credibility determinations or weigh the

evidence[,]"[5] but instead must view the evidence in the light most favorable to the nonmoving

party.[6]  When the movant supports its motion with documentary proof such as depositions and

affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some

"specific facts showing that there is a genuine issue for trial."[7]  It is not sufficient for the

nonmoving party "simply [to] show that there is some metaphysical doubt as to the material

facts."[8]  These facts must constitute more than a scintilla of evidence, and must rise to the level

that a reasonable juror could find by a preponderance of the evidence the nonmoving party is

---

[4] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[5] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[7] *Celotex*, 477 U.S. at 324.

[8] *Matsushita*, 475 U.S. at 586.

entitled to a verdict.[9]  To determine whether it should grant summary judgment, the court should

ask "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law."[10]

A court must enter summary judgment "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, on which that

party will bear the burden of proof at trial."[11]

## ANALYSIS

Plaintiff does not specifically respond or object to all of Defendant's arguments, which

address each of Plaintiff's claims.  Nevertheless, the Court will address each claim in turn.

### Title VII Discrimination Claim

Plaintiff claims she was discriminated against based upon her race in violation of Title

VII.

### Punitive Damages

Plaintiff seeks both compensatory and punitive damages based on her Title VII

discrimination claim.  42 U.S.C. 1981a-(b)(1) bars the award of punitive damages against a

state.[12]  Therefore, the Court **GRANTS** summary judgment with respect to Plaintiff's request for

punitive damages for Title VII discrimination.

---

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[10] *Id.* at 251-52.

[11] *Celotex*, 477 U.S. at 322.

[12] *See also*, *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998).

<u>Statute of Limitations</u>

Before a plaintiff may bring suit for employment discrimination, the plaintiff must first file a timely discrimination charge with the EEOC.[13]  The applicable statute of limitations for filing a charge with EEOC begins to run from the date of "the alleged unlawful employment practice."[14]  Where alleged unlawful practices occur in a "deferral state" like Tennessee, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file an EEOC charge within 300 days of the alleged discriminatory act.[15]  Thus, Plaintiff must allege some unlawful employment practice that occurred within 300 days of March 9, 2011, the day on which Plaintiff filed her EEOC charge as to these claims.  In other words, only alleged discriminatory acts occurring after May 12, 2010, are timely.  Any alleged discriminatory acts occurring before that date are outside the statute of limitations and cannot be considered by the Court.

<u>Discrimination Based on Facts After May, 12, 2010</u>

The framework for analyzing a Title VII claim was established by the Supreme Court in *McDonnell Douglas Corp. v. Greene,* 411 U.S. 792 (1973). In order to prevail under Title VII, the Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a

---

[13] *Alexander v. Local 496, Laborers' Int'l Union of N. Am.,* 177 F.3d 394, 407 (6th Cir.1999), *cert. denied,* 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000).

[14] 42 U.S.C. § 2000e-5(e)(1).

[15] 42 U.S.C. § 12117(a); *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001). Title VII has what the Sixth Circuit has labelled "a dual statute of limitations," one for deferral states and a general 180-day limitations period for every other state. *Id*.

preponderance of the evidence.[16]  While this evidence need not be decisive, it must be "sufficiently strong to raise an inference that [the employer's conduct was] motivated" by illegal discrimination.[17]

If a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to produce evidence of a legitimate, non-discriminatory (or retaliatory) reason for its actions.[18]  If the defendant produces evidence of a legitimate, non-discriminatory reason, the burden of production shifts back to the plaintiff to show the defendant's proffered explanation is pretextual.[19]  While the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff,"[20] the Sixth Circuit cautions district courts that the plaintiff's burden under the *McDonnell Douglas/Burdine* framework is "not onerous" and is "easily met."[21]

Since the Court cannot consider any allegations occurring before May 12, 2010, the Court will examine only the remaining allegations in determining whether to grant summary judgment. The only evidence Plaintiff has provided to support a claim of discrimination after May 12, 2010

---

[16] *Id.*, 411 U.S. at 802; *Wilson v. Stroh Co., Inc.,* 952 F.2d 942, 945 (6th Cir. 1992) (citing *Texas Dep't of Community Affairs*, 450 U.S. at 252-53).

[17] *Wilson*, 952 F.2d at 945 (quoting *McKenzie v. Sawyer*, 684 F.2d 62, 71 (D.C. Cir. 1982)).

[18] *McDonnell Douglas*, 411 U.S. at 802.

[19]  *Burdine*, 450 U.S. at 253.

[20] *Id.*

[21] *See, e.g., Equal Employment Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

is that she did not get hired for the Field Supervisor I position during the third round of interviews in June and July 2010.  Plaintiff cannot establish a prima facie case of discrimination based on the fact that she was not hired on this occasion.

In order to make out a prima facie case for race discrimination under the *McDonnell Douglas/Burdine* framework, a plaintiff must make four showings: (1) she is a member of a protected class; (2) she was qualified for the position for which she applied or which she held; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly-situated employees outside her protected class.[22]

Here, assuming that Plaintiff can make out the first three elements, she fails on the fourth. Lewis, who was hired instead of Plaintiff is also an African American woman.  Thus, Plaintiff cannot show that somebody outside the protected class was treated differently than she was. Therefore, the Court **GRANTS** Defendant's Motion on Plaintiff's Title VII discrimination claim.

### Retaliation Claim

Plaintiff also alleges a retaliation claim under Title VII.  However, the evidence does not support such a claim.  Like a Title VII discrimination claim, a retaliation claim is governed by the *McDonnell Douglas/Burdine* framework.[23]  Thus, to make out a prima facie case of retaliation, Plaintiff must prove, "(1) [she] engaged in activity protected under Title VII; (2) [her] exercise of

---

[22] *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001); *Haley v. Gen. Elec. Co.*, 3 Fed. App'x 240, 247 (6th Cir. 2001).

[23] *Fuhr v. Hazel Park Sch. Dist.*, 710, F.3d 668, 674 (6th Cir. 2013), reh'g denied (Apr. 12, 2013).

her protected rights was known to defendant; (3) an adverse employment action was subsequently taken against [her] or [she] was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment."[24]

Plaintiff alleges she was retaliated against by not getting the ACE award in May 2010, but she has not alleged or provided any evidence demonstrating that she engaged in any protected activity against which this was an act of retaliation.  Plaintiff's conversation with Dunbar and her filing of the THRC and EEOC complaints all occurred after the ACE awards were given.

During the summer of 2010, Plaintiff contacted Dunbar to inquire about filing a discrimination complaint.  Subsequently, Lewis was chosen over Plaintiff for the Field Supervisor I position from the June and July round of interviews.  It is unclear whether Plaintiff is claiming that the hiring of Lewis was in retaliation for her complaint.  To the extent that she is, there is no evidence to suggest those making the hiring decisions knew of Plaintiff's conversation with Dunbar[25] or that there was any other causal connection between the two.  Thus, Plaintiff fails to meet elements two and four and cannot make out a prima facie case for retaliation.  The Court therefore **GRANTS** Defendant's Motion

---

[24] *Id.*

[25] Rather, Dunbar states in her affidavit that she does not recall speaking to anybody about Plaintiff's inquiry.

## Hostile Work Environment Claim

It appears that Plaintiff also pleads a Title VII hostile work environment claim.  Although she does not specifically reference a hostile work environment claim in her Amended Complaint, she alleges facts which seem to indicate she is claiming harassment.  Additionally, Plaintiff claimed she was subject to a hostile work environment in both the THRC investigation and in her EEOC Charge.

First, as discussed above, the statute of limitations for Title VII bars any actions that occurred before May 12, 2010.  The Court will therefore consider only those claims occurring after that date.

To survive summary judgment on a Title VII hostile environment claim, a plaintiff must establish (1) she is a member of a protected class; (2) she was subjected to harassment based on race; (3) the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment, and (4) the employer was liable for the harassing conduct.[26]

Plaintiff alleges that on March 29, 2010, Phillips told her that they "had to hire someone white."[27]  Plaintiff also alleges that before Lawrence was promoted, she heard Phillips state "there are so many blacks on this floor."[28]  She claims that Phillips deceived her in thinking she

---

[26] *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627 (6th Cir. 2013).

[27] (Pl.'s Amended Compl. ¶ 10, Doc ID 109).

[28] It is unclear from Plaintiff's Amended Complaint when Phillips allegedly made this comment, but it appears that it happened on or around March 26, 2010.

12

would be promoted and that Luckett lied when she said that Plaintiff had a loud outburst after finding out that Lawrence had been promoted instead of Plaintiff.[29]  Plaintiff also explained to Investigator Smith that she thought Phillips created a hostile work environment when Phillips promoted Lawrence.[30]  Plaintiff believed that it was hostile because she had to work around Lawrence when she did not want to see her.[31]

First, the allegations that occurred before May 2010 are time-barred. Second, Plaintiff provides no evidentiary support for any of these allegations.  In her affidavit, Phillips denied making either of the alleged comments and stated that race was not a factor in her decision to recommend Lawrence for promotion.[32]  Finally, Plaintiff's own feelings that she did not want to work around Lawrence are insufficient to establish a hostile work environment claim.  Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[33]  Plaintiff's displeasure with working with Lawrence after she was promoted is simply not enough to rise to this level.  The Court therefore **GRANTS** Defendant's Motion as to Plaintiff's hostile work environment claim.

---

[29] (Pl.'s Amended Compl. ¶ 10, Doc ID 109-10).

[30] (Smith Aff., Exhibit, Doc ID 421).

[31] (Smith Aff., Exhibit, Doc ID 424).

[32] (Luckett Aff. ¶¶ 18-19).

[33] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

**Age Discrimination Claim**

Plaintiff states in her Amended Complaint that Defendant failed to promote her because of her age. However, she does not reference any age discrimination statute in her pleadings. Further, she provides no factual evidence to support this claim. Plaintiff pleads in her Amended Complaint that she is thirteen years older than Lewis, who got hired instead of her for the Field Supervisor I position in July 2010. However, Plaintiff may not rest on her pleadings,[34] and even if she could, this evidence would be insufficient to support a claim of age discrimination, which requires a plaintiff to show: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action, and (4) circumstances that support an inference of discrimination."[35] Simply showing that she is older than Lewis is insufficient to satisfy this burden.

Finally, even if Plaintiff had properly pleaded a claim under the ADEA and provided the evidence to support such a claim, there is no abrogation of sovereign immunity under the ADEA.[36] Therefore, the Court does not have jurisdiction to hear a claim under the ADEA against DHS. Thus, the Court **GRANTS** Defendant's Motion as to Plaintiff's age discrimination claim.

---

[34] *Celotex*, 477 U.S. at 324.

[35] *Blizzard v. Marion Technical Inst.*, 698 F.3d 275, 283 (6th Cir. 2012).

[36] *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 68 (2000).

14

**Constructive Discharge Claim**

Once again, it is difficult to determine whether plaintiff is actually pleading a constructive discharge claim. However, she does state in her Amended Complaint that Defendant "made my job too unbearable for me to work and caused me to be overly stressed." Therefore, the Court will consider this claim.

To demonstrate a constructive discharge, a plaintiff must present evidence to establish that the employer "deliberately created intolerable working conditions as perceived by a reasonable person" and that "the employer did so with the intention of forcing the employee to quit."[37] Factors to determine whether there is a hostile work environment include: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status."[38]

Plaintiff has provided no evidence supporting any of these factors. Her broad allegations and pleadings are insufficient to support a claim of constructive discharge. Therefore, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for constructive discharge.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish claims of race discrimination,

---

[37] *Logan v. Denny's*, 259 F.3d 558, 568-69 (6th Cir. 2001) (internal quotations omitted).

[38] *Id.* at 569.

retaliation, hostile work environment, constructive discharge, and age discrimination.  Therefore,

the Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 1, 2013.

16